IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

PATRICIA COBURN,

      Plaintiff,

v.

CARGILL, INC., et al.,

      Defendants.

No. 09-2844-JPM-dkv

---

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION
ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR-REPLY
ORDER DENYING PLAINTIFF'S MOTIONS TO STRIKE
THE BRANDSTETTER AFFIDAVITS
ORDER GRANTING CARGILL'S MOTION FOR SUMMARY JUDGMENT
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

---

Before the Court are Defendant Cargill, Inc.'s ("Cargill"),
Motion for Summary Judgment, filed August 30, 2012, (ECF No. 61);
Plaintiff Patricia Coburn's ("Coburn" or "Plaintiff") Response to
the Motion for Summary Judgment, which incorporates a Motion for
reconsideration regarding the dismissal of the race-discrimination
and retaliation claims based on Cargill's requirement that
production workers clock out for meals, (ECF No. 66); "Plaintiff's
Motion For Leave to Response to the Defendant Reply in support Of
Its Motion for Summary Judgment" ("Motion for Leave To File a Sur-

Response"), (ECF No. 80); and Plaintiff's two Motions to strike the affidavits of Barry Brandstetter, (ECF Nos. 83; ECF No. 85).

For the reasons stated herein, the Court DENIES Plaintiff's Motion for reconsideration, GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Leave To File a Sur-Response, DENIES Plaintiff's Motions to strike the Brandstetter Affidavits, GRANTS Cargill's Motion for Summary Judgment, and DISMISSES Plaintiff's Amended Complaint.

On August 30, 2012, Cargill filed a Motion for Summary Judgment, supported by a legal memorandum, a statement of undisputed facts, the deposition of Plaintiff, and various affidavits and documents. (ECF No. 61; ECF No. 62.) On October 1, 2012, Plaintiff filed a timely Response to Cargill's Motion for Summary Judgment, including a Response to Cargill's Statement of Undisputed Facts, her own factual affidavit, the affidavit of Francois Johnson ("Johnson"), a legal memorandum, and forty-eight exhibits. (ECF No. 65; ECF No. 66.)[1] On October 16, 2012, Cargill

---

[1]    Plaintiff's legal memorandum is forty-six pages long, including the caption and signature line. Local Rule 7.2(e) provides that, "[u]nless otherwise ordered by the Court, memoranda in support and in opposition to motions shall not exceed 20 pages in length . . . ." Plaintiff did not seek leave to exceed the page limitation. In the interest of expediting this matter, the Court declines to strike Plaintiff's legal memorandum and to order her to comply with the page limitation. However, as will be addressed infra, the Court declines to consider any factual matters that are not responsive to Cargill's Statement of Undisputed Facts or Plaintiff's Response to that Statement.

    Plaintiff's October 1, 2012, filing was titled "Plaintiff Coburn's Memorandum of Law in Support of its Motion To Deny Defendant Cargill's Motion for Summary Judgment, and that the Courts Reconsider Its Previous Motion To Dismiss Two of Johnson's Asserted Claims of Discrimination and Retaliation Claims Based on Clocking Out During Meal." (ECF No. 66 at 1.) Thus, in addition to being a
(continued...)

2

filed a Reply in further support of its Motion for Summary

Judgment, (ECF No. 68), and two additional documents, consisting of

its evidentiary objections to certain portions of the affidavits of

Plaintiff and Johnson, (ECF No. 69; ECF No. 70). On November 19,

2012, Plaintiff filed her Motion for Leave To File a Sur-Response,

(ECF No. 80),[2] and a response to Defendant's evidentiary objections

to her factual affidavit on November 19, 2012, (ECF No. 81).[3]

---

[1]    (...continued)
response to Cargill's Motion for Summary Judgment, that filing appears to
constitute a Motion for partial reconsideration of the February 25, 2011, Order
dismissing the claims in the original Complaint ("Original Complaint"). (See ECF
No. 34.) Plaintiff has not briefed her Motion for reconsideration, although her
filing states, in passing, that Garry Follis was not required to adhere to the
meal policy when he worked at the grain elevator where Plaintiff is employed.
(See, e.g., ECF No. 66 at 2, 4, 6.) The Court dismissed these race discrimination
and retaliation claims because the Original Complaint did not allege a materially
adverse employment action. (ECF No. 34 at 12-14.) Because the change of policy
was not material, any evidence Plaintiff may have about whether or not Garry
Follis was required to adhere to it does not alter the Court's conclusion.
Plaintiff's Motion for reconsideration is DENIED.

[2]    The local rules do not contemplate the filing of sur-responses. See
W.D. Tenn. Civ. R. 56.1. Moreover, Plaintiff's proposed sur-response was
submitted over thirty days after Defendant's Reply. (Compare ECF No. 68, with
ECF No. 80.) Because Cargill's Reply includes a new factual affidavit,
Plaintiff's Motion for Leave To File a Sur-Response is GRANTED only insofar as
she seeks to respond to that new affidavit. Therefore, the Court will consider
only the portion of Plaintiff's proposed sur-response that is entitled "No lead
Person Position Was Ever Open at the Second Street Facility is a Pretext." (See
ECF No. 80 at 5-6.) Plaintiff's Motion is, in all other respects, DENIED.

[3]    Plaintiff's Response is unsigned, as required by Federal Rule of
Civil Procedure 11(a). In the interest of expediting this matter, the Court will
overlook this defect in this instance only. The Response consists of two pages
of handwritten responses to the objections to Plaintiff's affidavit, accompanied
by eighty one pages of documents. The Court declines to consider these additional
documents, which were not referenced in the text of the Response, except insofar
as the documents are exhibits to the portion of Plaintiff's Sur-Response that the
Court has accepted. Plaintiff did not respond to Cargill's objections to
Johnson's affidavit.

    On December 3, 2012, Plaintiff filed "Plaintiff Coburn's Objections
to and Motion To Strike the Affidavits of Barry Brandstetter in Supporet of
Defendant's Motion for Summary Judgment." (ECF No. 83.) Plaintiff filed a
substantially similar version of that Motion on December 4, 2012. (ECF No. 85.)
Those Motions are DENIED as untimely. Even if the Motions were not untimely,
                                                            (continued...)

# I.        THE LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In this inquiry, "all facts, including inferences, are viewed in the light most favorable to the nonmoving party." Rosebrough v. Buckeye Valley High Sch., 690 F.3d 427, 430 (6th Cir. 2012); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party can meet this burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. See Fed. R. Civ. P. 56(c)(1); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). A

---

[3]        (...continued)
despite Plaintiff's assertions to the contrary, each of the Brandstetter Affidavits states that it was based on personal knowledge. Brandstetter's position at Cargill is Farm Service Group leader, with management responsibility for the grain elevator where Plaintiff was employed. (See, e.g., Supplemental Affidavit of Barry Brandstetter in Support of Cargill's Motion for Summary Judgment ("Brandstetter Suppl. Aff."), ECF No. 68-2, ¶ 2.) Furthermore, despite suggesting that the affidavits contradict one another, Plaintiff's Motions do not clearly identify contradictions between the various affidavits.

genuine dispute of material fact for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). One may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the non-movant must present "concrete evidence supporting [her] claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989) (citations omitted); see Fed. R. Civ. P. 56(c)(1).

To demonstrate that a fact is, or is not disputed, the parties are required to "cite[] to particular parts of materials in the record or show[] that the materials cited do not establish the absence or presence of a genuine dispute." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012) (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)) (internal quotation marks omitted). The district court does not have the duty to search the record for such evidence. See Fed. R. Civ. P. 56(c)(3); Parsons v. FedEx Corp., 360 F. App'x 642, 646 (6th Cir. 2010). The non-movant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in her favor. See Fed. R. Civ. P. 56(c)(1); Parsons, 360 F. App'x at 646.

The standards for establishing that a factual proposition is undisputed are stated in Federal Rule of Civil Procedure 56, which provides that

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact.[4]

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

Under Federal Rule of Civil Procedure 56:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;

---

[4]    See also W.D. Tenn. Civ. R. 56.1(b) (describing the responsibility of the non-moving party in response to the moving party's statement of undisputed facts).

(2)  consider the fact undisputed for purposes of the motion;

(3)  grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

(4)  issue any other appropriate order.

Fed. R. Civ. P. 56(e).

Although Plaintiff has submitted many documents and several affidavits in her Response to Cargill's Motion for Summary Judgment, few of those documents are cited in her Response to Cargill's Statement of Undisputed Facts. As previously noted, in evaluating a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); <u>see also Emerson v. Novartis Pharm. Corp.</u>, 446 F. App'x 733, 736 (6th Cir. 2011) ("[J]udges are not like pigs, hunting for truffles that might be buried in the record." (alteration in original) (internal quotation marks omitted)). With few exceptions, the Court has considered only those portions of the exhibits submitted by Plaintiff that are referenced in her Response to Cargill's Statement of Undisputed Facts, (ECF No. 65). The Court also declines to consider any factual statements in Plaintiff's legal memorandum, (ECF No. 66), that are not responsive to Cargill's Statement of Undisputed Facts.[5] The Court cannot deny a motion for

---

[5]     Under the Local Rules, Plaintiff could have presented her own statement of undisputed facts, supported by appropriate record citations. W.D. Tenn. Civ. R. 56.1(b) ("In addition, the non-movant's response may contain a
(continued...)

summary judgment on the expectation that Plaintiff will be able to produce evidence at trial to support her claims. <u>See Cox v. Ky. Dep't of Transp.</u>, 53 F.3d 146, 149 (6th Cir. 1995) ("Essentially, a motion for summary judgment is a means by which to 'challenge the opposing party to 'put up or shut up' on a critical issue.'").

## II.      ANALYSIS

The facts relevant to Cargill's Motion for Summary Judgment, set forth in Cargill's Statement of Undisputed Facts, (ECF No. 62), are as follows[6]:

> 1.   During all relevant times, Plaintiff, Patricia Coburn ("Coburn"), has worked for Cargill as a utility worker at Cargill's grain elevator located on Second Street in Memphis, Tennessee (the "Second Street Facility"). In this position, Coburn and other production employees are responsible for, among other things, checking in trucks that bring grain to the Second Street Facility, entering information regarding the grain into the Cargill computer system, and grading samples of the grain.

> 2.   During all relevant times, Cargill employed between 12 and 15 production employees at the Second Street Facility. All but one production worker at the Second Street Facility was African-American.

> 3.   Coburn and all other production employees at Second Street Facility have been members of Teamsters

---

[5]      (...continued)
concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.")

[6]      Unless otherwise noted, Plaintiff does not dispute Cargill's proposed findings.  These numbered paragraphs will be referred to as "Factual Finding [number]."

Local 667 (the "Union") during all times relevant to this action.[7]

4. During all relevant times, the terms and conditions of employment for union members were governed by the Agreement between Cargill, Incorporated and Teamsters Local No. 667, effective March 1, 2006 to February 28, 2009 (the "CBA").

5. On January 27, 2007, Coburn filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which she alleged that Cargill had assigned her and other minority employees to work in areas contaminated with asbestos because of their race.

6. On January 14, 2008, Coburn and eight other individuals filed a joint Complaint [(the "Joint Complaint")] against Cargill, asserting that Cargill discriminated against them on the basis of their race by requiring them to work in asbestos-contaminated areas and retaliated against them for complaining about alleged discrimination to TOSHA and/or the EEOC, among other claims (the "Asbestos Litigation").[8]

7. On March 18, 2009, Cargill filed a motion for summary judgment as to all claims asserted in the Asbestos Litigation. On March 24, 2010, [United States District Judge S. Thomas Anderson] granted Cargill's motion and dismissed Coburn's case in its entirety. The order further certified that an appeal of that action would not be [taken] in good faith.[9]

8. On September 24, 2008, Coburn's co-worker, Francois Johnson [("Johnson")], filed a charge with the EEOC alleging that Cargill retaliated against him and other Union Members for filing the Asbestos Litigation by no longer providing lunch money payments to union members and closing the Second Street Facility on Presidents' Day on February 18, 2008.

_____

[7] Plaintiff agrees with this proposed finding but cites to additional portions of her deposition. (ECF No. 65 at 1-2.) Those citations serve no purpose because there is no factual dispute.

[8] The referenced claims were split into eight separate lawsuits.

[9] Plaintiff's previous case was Coburn v. Cargill, Inc., No. 08-2055-STA-dkv, 2010 WL 1254932 (W.D. Tenn. Mar. 24, 2010), aff'd, No. 10-5492 (6th Cir. Dec. 19, 2011).

9.  On July 8, 2009, Johnson filed a charge with the EEOC alleging that Cargill discriminated and retaliated against him by requiring him to attend mandatory safety meetings in the morning and requiring him to clock out during meal breaks. On October 20, 2009, Johnson amended this EEOC charge to include a charge of discrimination and retaliation based on Cargill's failure to promote Johnson to the position of [Operational/Second Street Supervisor].[10]

10.  On July 23, 2009, Coburn filed her own charge with the EEOC alleging that Cargill discriminated and retaliated against her by requiring her to attend mandatory safety meetings in the morning and requiring her to clock out during meal breaks. Coburn's charge did not include any allegations regarding Cargill's failure to promote her to the position of Production Supervisor.

11.  On December 23, 2009, Coburn filed [her Original Compliant] against Cargill and four Cargill employees, asserting that Cargill had discriminated against her on the basis of her race and retaliated against her for filing the prior EEOC charge and the Asbestos Litigation by requiring her to attend morning meetings and clock out during meals. On February 5, 2010, Coburn and eight other individuals filed a [J]oint Complaint against Cargill, asserting the same claims as Coburn's [Original] Complaint, and adding the additional claim that Cargill had discriminated against them on the basis of their race and retaliated against them for filing the prior EEOC charge and the Asbestos Litigation by failing to allow them to apply for the position[s] of [lead man and] Production Supervisor. [The Joint Complaint was docketed as Case Number 10-2084-JPM-dkv (W.D. Tenn.)].[11]

12.  On February 19, 2010, the Court dismissed Coburn's constitutional claims, her claims under 28

---

[10]  The Court has amended this proposed finding, which stated that Johnson's charge addressed the failure to promote him to the position of Production Supervisor, to reflect the actual language in Johnson's EEOC charge. (ECF No. 1 at 7.)

[11]  The Court has amended this proposed finding to identify the Joint Complaint and to make clear that the Joint Complaint referred to a failure to promote to the positions of lead man and Production Supervisor. (See Joint Compl. at 3, ECF No. 1.)

U.S.C. § 1331, and her Title VII[12] claims against the individual defendants and directed Coburn to effect service on the defendants. On April 20, 2010, Cargill moved to dismiss Coburn's remaining claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

13.    On May 13, 2010, Coburn filed a charge with the EEOC alleging that Cargill discriminated against her on the basis of her race and retaliated against her ["]for filing a class-action discrimination lawsuit["] by denying her the opportunity for promotion to the position of Production Supervisor.[13]

14.    Also on May 13, 2010, Coburn filed a motion for leave to file an Amended Complaint seeking to add an additional claim that Cargill discriminated against her on the basis of her race and retaliated against her by failing to promote her to the position of Production Supervisor. On December 28, 2010, the Court entered an order denying Coburn's request to file an amended complaint because she had not yet obtained a right to sue letter from the EEOC, as she had filed her EEOC charge on the same day she asked for leave to file an Amended Complaint.

15.    On March 25, 2011, Coburn filed an Amended Complaint alleging that Cargill had discriminated against her on the basis of her race and retaliated against her for filing the prior EEOC charge and the Asbestos Litigation by requiring [production employees] to attend morning meetings and clock out during meals, by closing the Second Street Facility on President's Day[14] in 2008, by temporarily denying lunch money payments, and by

---

[12]    This refers to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

[13]    The Court has revised this proposed filing to make clear that the reference to a class-action discrimination lawsuit is a quotation from Plaintiff's EEOC charge. The Joint Complaint was not, in fact, a class action lawsuit. Notably, Plaintiff's EEOC charge, unlike the charge filed by Johnson, referred only to the Production Supervisor position.

[14]    This typo is consistent throughout Cargill's Statement of Undisputed Facts. (See ECF No. 62.)

failing to promote her to the position[s] of [lead] and Production Supervisor.[15]

16.   On April 19, 2011, Cargill filed a motion to dismiss Plaintiff's Amended Complaint. On January 19, 2012, the Court entered an order dismissing Coburn's discrimination and retaliation claims based on the required start-up meetings and the requirement that Coburn clock out during meal breaks. The Court denied Cargill's Motion to Dismiss as to Coburn's discrimination and retaliation claims based on failure to promote, denial of lunch money, and closure of Cargill's Second Street Facility on President's Day 2008.

## President's Day 2008

17.   The CBA sets forth certain holidays that are recognized as union holidays.

18.   During all relevant times, Cargill has recognized President's Day as a company-wide holiday . . . . However, President's Day is not recognized as a union holiday under the current CBA.[16]

19.   President's Day was recognized as a union holiday under a former Collective Bargaining Agreement, but on July 31, 2003, the Union and Cargill stipulated that President's Day would be replaced with New Years Eve Day as a recognized holiday.[17]

---

[15]   Plaintiff's Amended Complaint does not specify the position she believes she should have been promoted to. (ECF No. 25 at 3, 4.) The Amended Complaint alleges only that "[w]e the Plaintiffs believe that the company discriminated against the Plaintiffs and the blacks by denying us the opportunity of having a notice that management positions are open at the Second Street Facility, and by denying Plaintiffs promotions or the opportunity to bid on the as the union contract states." (Id. at 4.)

[16]   In response to Plaintiff's objection, (ECF No. 65 ¶ 18), the Court has revised this proposed finding to eliminate the statement that "the Second Street Facility is usually not open for operation on President's Day." The only authority cited by Cargill is page forty-four of Coburn's deposition, but she testified that "we normally be open on President's Day." (Coburn Dep., ECF No. 62-1, at 44:18-19.)

[17]   Plaintiff's objection, (ECF No. 65 ¶ 19), is not relevant to the proposed finding, which addresses a previous Collective Bargaining Agreement and a 2003 stipulation between Cargill and the Union.

20.  In certain years, Cargill has kept the Second Street Facility open . . . on President's Day if business needs dictate. The decision regarding whether or not to open the Second Street Facility and allow production employees to work was entirely dependent on business needs such as demand from customers, and whether any grain deliveries were scheduled for that day.[18]

21.  In 2007, Cargill's Second Street Facility was open on President's Day. In 2008, Cargill's Second Street Facility was closed on President's Day.

22.  Cargill management made the decision to close the facility on President's Day in 2008 because there was not a business need to open the facility as it was not a particularly busy time and there were no client deliveries scheduled for this day.[19]

23.  The closure of the Second Street Facility applied to all employees at the Second Street Facility,

_____

[18]  Plaintiff's objection, (ECF No. 65 ¶ 20), which refers to a previous Collective Bargaining Agreement and mentions specific years during which the Second Street Facility was open for Presidents' Day, do not contradict the statements in the text. Paragraph seven of Plaintiff's affidavit, (ECF No. 65-1 ¶ 7), opines that "[t]he closing on President's Day 2008, me and my co-workers believed it to be because of the Civil complaint the company received on January 2008." As will be discussed infra, Plaintiff's opinion that the closure was retaliatory is insufficient to infer discrimination.

    Plaintiff also cites paragraphs 16, 18, 19, and 20 of the Johnson Affidavit, (ECF No. 65-2). (ECF No. 65 ¶ 20.) Paragraphs 18 and 19, which mention specific years the plant was open on Presidents' Day, is cumulative to paragraphs 5 and 6 of Plaintiff's affidavit. Paragraph 16 states that "[f]armers benefited by bringing grain on President's day, they could get priced at a spot rate price on their grain." Paragraph 20 states that "it was customary to be open on President's Day and as in the previous 2 years trucks would've came and to prove it the company was open in 2009 as well." Cargill has objected to paragraphs 16 and 20 on the basis of lack of personal knowledge. Cargill has also objected to paragraph 20 as inadmissible lay opinion. (ECF No. 70 at 2.) Plaintiff has not responded to those objections, which are meritorious.

[19]  Plaintiff disputes this proposed finding, citing to a statement in her deposition that "[t]he plant closed 2008. It was open in 2009, 2007, 2006." (Coburn Dep. 50:6-7, ECF No. 66-42; see also Coburn Aff. ¶¶ 5-6; Johnson Aff. ¶¶ 18-19.) On that same page of her deposition, Plaintiff testified that she believed the plant was closed for Presidents' Day in 2010, that she could not recall whether it was closed in 2011, and that it was closed in 2012. (Coburn Dep. 50:13-21, ECF No. 66-42.) These facts do not contradict the statement in the text, which addresses the reason why Cargill closed the plant in 2008. Plaintiff's remaining citations were addressed in response to Factual Finding 20.

and no production employees or union members received pay for President's Day in 2008.[20]

24. Coburn admits that she does not have any knowledge regarding whether any deliveries were scheduled for President's Day in 2008. Coburn also admits that February is not during harvest season and that the Second Street Facility is normally not busy during this month.

25. In 2009, Cargill's Second Street Facility remained open on President's Day. Cargill's Second Street Facility was closed on President's Day in 2010, 2011 and 2012.

26. Coburn admits that she never talked to any member of Cargill's management regarding the reason that the facility was closed on President's Day in 2008 and that she has never heard anybody from Cargill management talk about why the Second Street Facility was closed that day. Coburn also admits that nobody from Cargill's management told her that the facility was being shut down on President's Day in 2008 because of a lawsuit or a charge of discrimination that had been filed.[21]

27. Coburn admits that she does not think the closure of the facility on Presidents' Day in 2008 was in retaliation for the Asbestos Litigation. Coburn admits that she is not sure what the closure of the facility on Presidents' Day in 2008 was in retaliation for, but it might have been in retaliation for the EEOC charges filed regarding the denial of the promotion to the position of Production Supervisor and the temporary denial of lunch money payments.[22]

---

[20]     Coburn's personal knowledge of whether the other production workers were paid for Presidents' Day in 2008 is based on the terms of the CBA. (Coburn Dep. 43:17-24, 44:8-18, 47:5-11.)

[21]     Plaintiff says she "agrees in part, disputes in part." (ECF No. 65 at 6.) She cites to her deposition, where she testified that she believed the plant closure in 2008 was due to retaliation "[b]ecause we normally worked, and we normally — we normally worked that day. And in 2008, we didn't." (Coburn Dep. 51:5-7.) Plaintiff also testified that she could not recall any other reason for her belief that the closure was retaliatory. (Id. 51:8-9.) That deposition testimony does not contradict the proposed finding, which concerns what Plaintiff heard from Cargill management.

[22]     Plaintiff responds, without elaboration, that she "agrees in part, disputes in part." (ECF No. 65 ¶ 26.) She cites to "(Coburn dep. 49-51:1-19)."
                                                              (continued...)

## Lunch Money Payments

28.  Section 13.8 of the CBA provides:

No employee shall be required to work more than six (6)
hours without being given a meal period of not less than
thirty (30) minutes, without pay, unless agreed
otherwise. However, where continuous operations are
necessary and an employee cannot be relieved, he may be
required to eat on the job, in which event his regular
thirty (30) minute meal period shall be included as
working time and be paid for at the rate of time and one-
half (1-1/2). An employee working continuously in excess
of two (2) hours at his overtime rate, as a continuation
of and beyond the end of his regular shift for that
pertinent day shall be provided with a lunch, or at the
employer's option shall be paid three dollars and fifty
cents ($3.50) in lieu of a meal.

29.  In or around June 2008, Cargill and the Union
had a dispute over interpretation of the CBA's lunch
money provisions. Cargill management interpreted the CBA
to only require lunch money payments when an employee
worked continuously for two hours beyond his shift and
did not actually take a lunch break during that shift,
whereas the Union interpreted the CBA to require lunch
money payments to any employee who worked two hours
beyond his shift, regardless of whether the employee
actually took a lunch break during that shift. After
discussing the situation with the Union, Cargill
recognized that the CBA was subject to different
interpretations, and agreed to adopt the Union's
interpretation. Cargill subsequently resumed payment of
lunch money to union members who worked the requisite

---

[22]    (...continued)
(Id.) Plaintiff's point is unclear, since the cited portion of Plaintiff's
deposition encompasses what appears to be most of her testimony on the plant
closure. The statements in the text are supported by the excerpts from
Plaintiff's deposition that Cargill cites. (Coburn Dep. 45:3-20, 45:24-47:4.)

        The Court notes that the plant closure in February 2008 could not be
in retaliation for the charges filed about the payment of lunch money and failure
to promote because those incidents occurred after the closure. Plaintiff seemed
to be confused at her deposition, (see Coburn Dep. 46:13-25, ECF No. 62-1 at 8),
but she also testified that she could not think of any other reason the plant was
closed, (Coburn Dep. 47:1-4, ECF No. 62-1 at 8).

hours, regardless of whether they actually took a lunch break during that shift.[23]

30. In or around June 2008, Cargill stopped providing lunch money to union members who worked in excess of ten hours and who also took a lunch break during this shift.[24]

31. The temporary termination of lunch money payments to the union employees affected all production workers at the Second Street Facility . . . .[25]

32. Coburn admits that she does not know what days she was entitled to lunch money where she did not receive lunch money payments. Coburn admits that she does not know how many times between June and August 2008 she worked more than ten hours in a day.

33. Coburn admits that the only reason she has to think that Cargill stopped paying lunch money for retaliatory reasons is the fact that the lunch money

---

[23] Plaintiff says that she "disputes this totally" and further states that "the defendant's story don't line up," (ECF No. 65 at 7), but she does not clearly explain her position. It is unclear why Plaintiff contends that the attachment to the Sparks Affidavit – a January 14, 2009, letter from Tim Adams, Cargill's former FSC Operations Leader, to a union representative – contradicts the statement in the text. The additional citations provided by Plaintiff are not helpful. Paragraph four of the Coburn Affidavit states that "[t]he union employees are off on Martin Luther King birthday." (ECF No. 65-1 ¶ 4.) Paragraphs four through seven of the Johnson Affidavit do not contradict the statements in the text. (ECF No. 65-2 ¶¶ 4-7.) Plaintiff also cites to an attorney's letter to the EEOC, dated October 23, 2008, in response to an EEOC charge filed by Francois Johnson. That letter addresses a claim that Johnson was denied wages on June 23, 2008. (ECF No. 66-1 at 2; see also Joint Action, Case Number 10-2084, ECF No. 3, at 10 (Johnson's EEOC charge stated that "I and other Union Members were denied wages for February 18, 2008 and again on June 23, 2008.").) The attorney letter, which is narrowly tailored to respond to the specific language of Johnson's EEOC charge, does not appear to be inconsistent with Cargill's Motion for Summary Judgment on the lunch-money issue. Finally, Plaintiff has cited, generally, to Cargill's original Answer but has not identified the provision on which she relies.

[24] Plaintiff has repeated her response to Factual Finding 29, (ECF No. 65 ¶ 30), but none of those citations undermine the statement in the text. (See Coburn Dep. 57:13-15, 62:8-13.)

[25] The Court has revised this proposed finding to eliminate the final word, "equally," because Coburn has testified that all production workers did not receive the same lunch money payment when Cargill reinstated its previous policy. (Coburn Dep. 65:6-11.)

payments stopped after the employees filed charges and grievances against Cargill.

34. Coburn admits that after discussing the termination of lunch money payments with Cargill management, Cargill resumed payment of lunch money to union members. Coburn admits that she received a payment of $182.00 on September 21, 2008 for the lunch money payments she did not receive from June to August 2008.[26]

35. Coburn admits that she does not have any information regarding Cargill's interpretation of the lunch money provision . . . . The only reason that Coburn believes the temporary termination of lunch money payments was retaliatory is that the lunch money payments occurred after employees filed charges and the complaint because "everything that has been done have [sic] something to do with charges we filed or either a grievance filed."[27]

### The Production Supervisor Position

36. In or around September, 2009, a Production Supervisor position became open at the Second Street Facility. Cargill posted the opening for this position, including the required qualifications for this position, on Cargill's Career Marketplace page on the company Intranet. Posting a position on the Career Marketplace page is Cargill's normal process for soliciting applications from existing Cargill employees, and all

---

[26] Plaintiff's Response cites portions of her deposition but does not state whether she disputes this proposed Factual Finding. In the only relevant excerpt, Plaintiff states that "I feel like [the reimbursement] was too little," (Coburn Dep. 65:1, ECF No. 62-1 at 12), but goes on to state that she has not calculated the amount of lunch money she was owed, (Coburn Dep. 65:2-7, 16-25, ECF No. 62-1 at 12).

[27] The Court has revised the citation to the statement that Coburn "does not know what the temporary denial of lunch money was in retaliation for." The Court also notes that pages fifty-five and fifty-six of Plaintiff's deposition were not submitted by Cargill.

Plaintiff states that she "disputes this totally," (ECF No. 65 ¶ 35), but she does not clearly explain her position. The proposed Factual Finding is supported by testimony given at Plaintiff's deposition. Paragraphs four through seven of the Johnson Affidavit state that Johnson was never given an explanation for the change, which differed from Cargill's prior practice. (ECF No. 65-2 ¶¶ 4-7.) The remainder of Plaintiff's record citations were addressed in response to Factual Finding 29.

Cargill employees . . . have access to the Career Marketplace page.[28]

37. Coburn never applied for the Production Supervisor position in September of 2009. Coburn alleges that she was not given the opportunity to apply for the position because Cargill did not give notice that the position was available.[29]

38. Coburn cannot dispute that the Production Supervisor opening was actually posted on Cargill's Intranet.[30]

39. Coburn admits that there is no position that she feels she should have been promoted to, only that she should have been given the opportunity to apply. However, Coburn did not ask anyone at Cargill how to apply for or where to look for open positions at Cargill.[31]

40. Cargill considered only persons who applied using Cargill's procedures for this position. Cargill ultimately hired Tricie Seawright, an African-American female who applied for the position in September 2009[,]

---

[28] The Court has revised this proposed finding to eliminate the words "including Coburn" because the cited affidavit does not specifically mention Coburn. In her response, Plaintiff disputes the proposed finding insofar as it suggests that she had actual knowledge of how to look for job postings. (ECF No. 65 ¶ 36.) According to Plaintiff, in September 2009 she did not know that in-house jobs were posted online. Plaintiff also states that she does not know how to search for jobs on the Career Marketplace Page. (Coburn Aff. ¶ 14; Coburn Dep. 79:3-7, 81:16-82:4.)

[29] Coburn agrees with this proposed finding. (ECF No. 65 ¶ 37.) She also states that "we have start up meeting everyday 99% of the time," (id.), which presumably means that management had an opportunity orally to notify production workers of the job openings.

[30] Plaintiff says she disputes this proposed finding, (ECF No. 65 ¶ 38), but her deposition testimony says that she does not know whether the opening was posted or not. (Coburn Dep. 82:21-83:2.)

[31] Plaintiff says she disputes this proposed finding, (ECF No. 65 ¶ 39), which is supported by the cited portions of her deposition. Plaintiff asserts, again, that "no one in management would tell the blacks we would look up and find someone from somewhere else in the job and they would be either a manager in training, or a manager." (Id.) Plaintiff cites to paragraphs eleven through thirteen of her own affidavit, which discusses the hiring of Tricie Seawright and the temporary assignment of Gary Follis to the Second Street Facility. Plaintiff also cites to paragraphs eight through twelve of the Johnson Affidavit, which addresses Johnson's ignorance of how to apply for the Production Supervisor position. These citations do not contradict the statements in the text.

[as the new Production Supervisor for the Second Street Facility]. At that time, Ms. Seawright was working as a Production Supervisor at Cargill's President's Island Facility . . . .[32]

41. Because multiple positions had to be filled at the same time, Cargill temporarily transferred Garry Follis to supervise at the Second Street Facility during this time. When Cargill filled all the vacant positions at the Second Street Facility, Mr. Follis returned to his permanent position at Cargill's President's Island Facility.[33]

42. Coburn admits that Garry Follis only worked at the Second Street Facilty temporarily and then returned to work at Cargill's President's Island facility. Coburn admits that Cargill hired Ms. Seawright to fill the position of Production Supervisor in September 2009, and that Ms. Seawright was employed as the Production Supervisor at the Second Street Facility for over two years.[34]

---

[32]     The Court has revised this proposed finding to move the phrase "as the new Production Supervisor for the Second Street Facility," to the end to the second sentence, where it appears to belong.

     Plaintiff does not appear to dispute the statements in the text. Instead, she states that "the defendant's never posted the Job that was given to Garry Follis at no time in Discoveries did defendant communicated ,or provided documents to show Garry Follis hiring date, or he applied. For his job. Follis resume didn't even admit he was a temporary worker for Cargill before he was hired." (ECF No. 65 ¶ 40.) Plaintiff is referring to the temporary assignment of Follis to the Second Street Facility on or about September 2009, and she cites Follis's undated resume, which states that, beginning in September 2007, he was Production/Shift Lead at Cargill's Presidents Island Facility. (ECF No. 66-17 at 1.) The temporary reassignment of Follis to the Second Street Facility, which will be discussed _infra_, does not appear to contradict this proposed finding.

[33]     Plaintiff says that she disputes this claim because "Follis stayed at the 2nd street facility for over 7 moths." (ECF No. 65 ¶ 41.) Even if Plaintiff is correct — and she has provided no record citation for this proposition — her objection does not counter Cargill's statement that Follis' assignment to the Second Street Facility was temporary.

[34]     Plaintiff says she disputes this proposed finding, which is supported by the cited portions of her deposition, because "in Francois Johnson case # 10-2084, the defendant in their undisputed facts stated Ms. Seawright applied for the job of supervisor in 2008, but did not say she applied for the 2009 position. Why do she need to apply for a position she already have." (ECF No. 65 ¶ 42.) Plaintiff is referring to paragraph fifty-nine of Cargill's Statement of Undisputed Facts in support of Cargill's Motion for Summary Judgment in the case
(continued...)

43. Coburn believes she is qualified for the position because she "knows everything about the grain elevator." However, Coburn does not believe that she is more qualified than Ms. Seawright for the position of Production Supervisor. The only reason that Coburn doubts Ms. Seawright's qualifications for the position of Production Supervisor is that Cargill provided training to Ms. Seawright when she began working as a Production Supervisor and that she once asked Coburn how to put something in the computer.[35]

44. Coburn admits that other than obtaining some computer training, she has no post-secondary formal education. Coburn further admits that she never worked as a supervisor at Cargill, and that she has never managed

---

[34] (...continued)
filed by Johnson (Joint Action, Case Number 10-2084, ECF No. 38 ¶ 59 ("Ms. Seawright applied for the Production Supervisor position in September 2008.").) That proposed finding is apparently a typographical error, because it is supported by paragraph 8 of the 2011 Brandstetter Affidavit, which states that Seawright was hired to fill the Production Supervisor position at the Second Street Facility but does not mention a date. Seawright's resume says that she was hired as a Production Supervisor by Cargill in February 2008. (2011 Brandstetter Aff. Ex. 2, ECF No. 62-9 at 5.)

Plaintiff also cites to paragraphs 8, 10, 11, 12, 14, 15, and 16 of her affidavit, which address the lunch money issue, the temporary transfer of Follis to the Second Street Facility, and the grievance that was filed about Follis taking a classified position. These issues are largely irrelevant to the proposed Factual Finding, which emphasizes that the position of Production Supervisor was filled by Seawright rather than Follis. Whether Follis may have violated the CBA is not at issue in this suit, which is limited to race discrimination and retaliation.

Plaintiff also cites paragraphs 41 through 47 of the Johnson Affidavit, which addresses Follis and Seawright. (A complete copy of that affidavit is found at ECF No. 66-15.) Cargill has objected to many of Johnson's statements in paragraphs 41, 45, and 47. (ECF No. 70 at 3-4.) Plaintiff has not responded to those objections, which are well taken.

[35] Plaintiff states that she agrees with this proposed finding, but she also states that "seawright was taught the rules and regulation for the business trained in the grain industry." (ECF No. 65 ¶ 43.) Plaintiff cites "exh. 4. 2nd set of admission No: 19,20,21." (Id.) Exhibit 4 to Plaintiff's legal memorandum is Defendant Cargill, Inc.'s Answers and Objections to Plaintiff's Second Set of Interrogatories, (ECF No. 66-4), and that document contains no interrogatories numbered 19, 20, and 21. The correct document is Exhibit 6, (ECF No. 66-6). In its response to Request for Admission No. 19, Cargill admitted that "Ms. Seawright had no Grain experience when hired on February 2008." (Id. at 2.) In response to Request for Admission No. 20, Cargill admitted that "it provided Ms. Seawright with training related to the grain industry during her employment with Cargill." (Id.) Cargill also admitted that "Ms. Seawright resume show she had no grain experience." (Id. (Request for Admission No. 21).)

an EHS Program. In fact, at the time of her deposition, she did not know what an EHS Program was. Coburn also admits that she has no knowledge of the specific governmental regulations that apply to Cargill's grain elevators.[36]

45. Coburn admits that she does not know the reason why the union employees were not told how to apply for open positions at Cargill. She believes that the fact that Cargill did not tell the union employees how to apply to open positions was wrong, but she cannot say it was retaliation.[37]

## A.    Plaintiff's Disparate Treatment Claim[38]

Discrimination claims based upon circumstantial evidence, such as Plaintiff's claim in the instant case, are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas framework,

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reasons for the employee's rejection. Third, should the

---

[36]    Plaintiff says she agrees with the proposed finding, but states that "neither did Seawright." (ECF No. 65 ¶ 44.) Plaintiff cited nothing from the record in support of that assertion. According to Seawright's resume, she was employed as a Production Supervisor at Cargill since February 2008. (2011 Brandstetter Aff. Ex. 2, ECF No. 62-9 at 5.) While at Cargill, Seawright claimed to "effectively lead facility EH&S program while adhering to all governmental regulations and Cargill policies and engage employees in this effort." (Id.)

[37]    Plaintiff states that she agrees, but "the attorney's question was about retaliation for not telling Plaintiff and the blacks how to apply for a production supervisor position. I said I can not say it was. I am suing because I was not given the opportunity of the notice for the job now this Plaintiff believe to be retaliation." (ECF No. 65 ¶ 45.) Plaintiff cites to pages 110 through 114 of her deposition, but she has provided only pages 113 through 114. (See ECF No. 66-42 at 14-15.) Those pages do not appear to support her position.

[38]    In the interest of clarity, the Court has not adopted the organization of Cargill's Motion for Summary Judgment. Instead, the Court will address Plaintiff's disparate treatment claim arising from the failure to promote and then will analyze her retaliation claims.

> defendant carry this burden, the plaintiff must then have
> an opportunity to prove by a preponderance of the
> evidence that the legitimate reasons offered by the
> defendant were not its true reasons, but were a pretext
> for discrimination.

Spees v. James Marine, Inc., 617 F.3d 380, 389 (6th Cir. 2010)

(quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–

53 (1981)) (internal quotation marks omitted). This standard is

used for disparate treatment and retaliation claims under laws

proscribing employment discrimination, including Title VII.  See,

e.g., Russell v. Univ. of Toledo, 537 F.3d 596 (6th Cir. 2008)

(applying the framework to disparate treatment and retaliation

claims brought pursuant to Title VII).[39] "The ultimate burden of

persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff remains at all times with the

plaintiff." Burdine, 450 U.S. at 253.

To establish a prima facie case of race discrimination in the

context of a failure-to-promote claim, Plaintiff must show that (1)

she is a member of a protected group; (2) she applied for and was

qualified for promotion; (3) she was considered for and denied the

promotion; and (4) other employees of similar qualifications who

---

[39]     Since Cargill filed its Motion for Summary Judgment, the Court has
dismissed Plaintiff's Title VII failure-to-promote claim as untimely. Plaintiff's
only surviving disparate treatment claims arise under 42 U.S.C. § 1981
("§ 1981")and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-
101 et seq. (See ECF No. 63 at 15, 15 n.9.) The standards for evaluating an
employment discrimination claim under 42 U.S.C. § 1981 and the THRA mirror those
under Title VII. Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 593 (6th
Cir. 2007); Noble v. Brinker Int'l, Inc., 391 F.3d 715, 720 (6th Cir. 2004);
Newman v. Fed. Express Corp., 266 F.3d 401, 406 (6th Cir. 2001). Forty-two U.S.C.
§ 1981 encompasses retaliation claims. CBOCS West, Inc. v. Humphries, 553 U.S.
442, 457 (2008).

were not members of the protected class received promotions. <u>Dews</u>
<u>v. A.B. Dick Co.</u>, 231 F.3d 1016, 1020-21 (6th Cir. 2000).[40] Cargill
contends that Plaintiff has not satisfied the second, third, and
fourth elements of a prima facie case. (ECF No. 61-1 at 17.)

Cargill first argues that the second and third elements have
not been satisfied because Plaintiff never applied for the
production supervisor position at the Second Street Facility. (<u>Id.</u>
at 17-18.) Ordinarily, a plaintiff bringing a claim of failure to
promote or failure to rehire must establish that she applied for
the position in question. See <u>Dews</u>, 231 F.3d at 1020 (failure to
promote); <u>Wanger v. G.A. Gray Co.</u>, 872 F.2d 142, 145 (6th Cir.
1989) (failure to rehire). "The purpose of this application element
is to eliminate a common non-discriminatory reason for rejecting a
job application; his failure to apply." <u>Allen v. Deerfield Mf'g</u>
<u>Inc.</u>, 424 F. Supp. 2d 987, 994 (S.D. Ohio 2006).

The United States Court of Appeals for the Sixth Circuit has
recognized limited circumstances in which an employee will not be
required formally to apply for an open position. See <u>Wanger</u>, 872
F.2d at 145.

> These circumstances include an environment created by the
> employer in which prospective applicants understand that
> a formal application would be futile because
> discrimination is so entrenched or pervasive. For this
> exception to apply, a pervasive, consistent, and
> continuing pattern or practice of discrimination must be

---

[40] In its Motion, Cargill cites a slightly different formulation of the
elements of a prima facie case that does not explicitly include a plaintiff's
application as a separate element of her claim. (<u>See</u> ECF No. 61-1 at 17.)

> shown to excuse an applicant from formally applying for
> the position. Also included is the situation where the
> employer has a practice of hiring without asking for
> applications or posting the opening. In this
> circumstance, a plaintiff must show that he would have
> applied for the position had he been aware of it.

Allen, 424 F. Supp. 2d at 994 (citations omitted); see also Dews,

231 F.3d at 1022 ("[I]n failure to promote cases a plaintiff does

not have to establish that he applied for and was considered for

the promotion when the employer does not notify its employees of

the available promotion or does not provide a formal mechanism for

expressing interest in the promotion. Instead, the company is held

to a duty to consider all those who might reasonably be interested

in a promotion were its availability made generally known.").

In cases where a formal application is not required, "the

plaintiff can establish the application element of a prima facie

case by showing that, had she known of an . . . opening, she would

have applied. In order for the employee to establish that he or she

would have applied for the position if they had been aware of it,

however, the employee must establish that she had shown more than

a general interest in the position." Wanger, 872 F.2d at 146

(citations omitted) (internal quotation marks omitted); see also

Nguyen v. City of Cleveland, 229 F.3d 559, 564 (6th Cir. 2000)

(affirming grant of summary judgment where employee presented no

evidence that he would have applied for the position); Day v.

Crystal Co., 471 F. Supp. 2d 874, 890 (E.D. Tenn. 2007) (granting

summary judgment where plaintiff expressed only a general interest in open position).

It is undisputed that Plaintiff did not apply for the position of Production Manager at the Second Street Facility. (Factual Finding ("FF") 37.) It is, therefore, necessary to consider whether some exception to the application requirement covers this case. Cargill posted the opening on the Career Marketplace page of the Company Intranet, which is available to all employees. (FF 36.) Cargill considered only applicants who applied using its procedures. (FF 40.) Plaintiff contends that she did not apply for the position because she did not know that there was an opening. (FF 37.) According to Plaintiff, she and the other, mostly African-American, union members were never informed that Cargill posted available positions on its intranet site. It is also undisputed, however, that Plaintiff did not ask anyone at Cargill how to apply for vacant positions. (FF 39.)

That Cargill did not affirmatively take steps to ensure that the production workers at the Second Street Facility knew how to apply for in-house vacancies is insufficient to excuse Plaintiff from the application requirement. Cargill has an established procedure for posting vacant positions, which it adhered to in this case. Plaintiff also does not, and cannot, contend that there is entrenched and pervasive discrimination such that any application

by an African American, the protected group to which Plaintiff belongs, would be futile.

Even if it were appropriate to apply the modified application standard, Plaintiff has come forward with no evidence to establish that she would have applied for the position of Production Supervisor had she known of the opening. The record is devoid of evidence that Plaintiff expressed even a general interest in the position of Production Supervisor. At her deposition, Plaintiff declined to identify any position she believes she should have been promoted to, stating only that it was wrong that the production workers were not given the opportunity to apply. (See FF 39.) Plaintiff's affidavit, which was submitted in opposition to Cargill's Motion for Summary Judgement, also does not address Plaintiff's interest in the Production Supervisor position.

Because Plaintiff has failed to satisfy the application requirement, Cargill is entitled to summary judgment on Plaintiff's claim arising from the failure to promote her to the position of Production Supervisor.[41]

---

[41]     It is unclear whether Plaintiff intends to assert a race discrimination claim arising from the failure to promote her to the position of "lead man." Much of Plaintiff's response is devoted to a discussion of how Garry Follis was transferred to the Second Street Facility in 2009, while the Production Supervisor position was vacant, and assumed the position of "lead man" without adhering to the attendance and meal policies. Plaintiff emphasizes that, after a grievance was filed, Follis returned to the President's Island plant and later returned as a supervisor. (See, e.g., Coburn Aff. ¶¶ 11-16; Johnson Aff. ¶ 47.) In his affidavit submitted in support of Cargill's Motion, Brandstetter explains that, "[w]hile we were in the process of hiring a new Production Supervisor and also filling other management positions at the Second Street Facility, we asked Garry Follis to temporarily supervise employees at the Second Street Facility. At that time, Mr. Follis was a lead person at Cargill's
(continued...)

Plaintiff also cannot satisfy the fourth element of a prima facie case because the position of Production Supervisor was filled by Tricie Seawright ("Seawright"), who, like Plaintiff, is African

---

[41] (...continued)
President's Island grain elevator. He later was promoted to Production Supervisor at the President's Island facility." (2011 Brandstetter Aff., ECF No. 62-9, ¶ 9.)

Cargill's Reply includes a supplemental affidavit by Brandstetter, which states, in pertinent part, as follows:

> 4.    The position of "Lead Maintenance" is specifically enumerated under the CBA and is governed by the selection procedures of the CBA. There is no "Lead Person" role at Second Street.
>
> 5.    Since at least 2008, George ("Jack") Richmond, a Union member, has been the Lead Maintenance employee at the Second Street Facility pursuant to the provisions of the CBA. Mr. Richmond is African American.
>
> 6.    Garry Follis was never a "Lead Person" at the Second Street Facility (there is no such thing), nor is he eligible to be a Lead Maintenance employee because he is not a member of the bargaining unit.
>
> 7.    Rather, Mr. Follis was at one time a Lead Person at a separate Cargill grain facility located at 1877 Channel Avenue, Memphis, Tennessee, 38113, known as the "President's Island Facility."

(Brandstetter Suppl. Aff., ECF No. 68-2, ¶¶ 4-7.) The CBA is limited to Cargill's Second Street Facility. (CBA § 1.1, ECF No. 62-8 Ex. 1 ("The Company recognizes the Union as the sole and exclusive bargaining agency for wages, terms and other conditions of employment for the bargaining unit which consists of production and maintenance employees employed at the Company's grain elevator located at 1387 North Second Street, Memphis, Tennessee . . . . This agreement applies only to the above Company facilities located at Memphis, Tennessee.").)

Cargill argues that there was no open position of "Lead Person" at the Second Street Facility. (ECF No. 68 at 6-7.) No such position existed at the Second Street Facility, and the position of Lead Maintenance was occupied by Richmond, an African American. (Brandstetter Suppl. Aff. ¶¶ 4-6.) Instead, Follis was temporarily assigned to the Second Street Facility as an interim Production Supervisor until a permanent hire had been made. (ECF No. 68 at 6.) Thus, Plaintiff has no disparate-treatment claim arising from Cargill's failure to promote her to the position of "Lead Person."

Most of Plaintiff's discussion of this issue pertains to Cargill's compliance with the terms of the CBA, which is irrelevant to her disparate-treatment claim of failure to promote. Whether Cargill breached the CBA when it initially transferred Follis to the Second Street Facility has no bearing on whether there was a separate "lead" position for which Plaintiff was denied the opportunity to apply.

American. (FF 40.) Although there is evidence in the record about the transfers of Garry Follis between Cargill's President's Island Facility and its Second Street Facility, Coburn does not dispute that Seawright was the Production Supervisor at the Second Street Facility for at least two years. (FF 42.) Therefore, Plaintiff's race discrimination claim must fail as a matter of law. <u>Alexander v. Ohio State Univ. Coll. of Soc. Work</u>, 429 F. App'x 481, 487 (6th Cir.), <u>cert. denied</u>, 132 S. Ct. 528 (2011).[42]

Therefore, the Court GRANTS Cargill's Motion for Summary Judgment on Plaintiff's disparate-treatment claim of failure to promote. This claim is DISMISSED WITH PREJUDICE.

## B. Retaliation Claims

The Amended Complaint asserts claims under Title VII, § 1981, and the THRA that Cargill retaliated against her by closing the plant on Presidents' Day in 2008 and denying her lunch money. (<u>See</u> ECF No. 35 at 2, 4, 6.) Although the Court has dismissed Plaintiff's Title VII claim of failure to promote, the Amended

---

[42] The Court declines to address Cargill's argument that Plaintiff cannot show that she was qualified for the position of Production Supervisor. The job posting submitted by Cargill is partially illegible, so the criteria for the position cannot readily be discerned. (<u>See</u> ECF No. 62-9.) Moreover, although Cargill is correct that Plaintiff does not satisfy some of the listed qualifications, it is also undisputed that Seawright, the successful candidate, did not have the required "[m]inimum 2 years grain operations experience." Seawright had been a Production Supervisor at Cargill's President's Island Facility since February 2008 (ECF No. 62-9 at 5), less than two years before the opening occurred at the Second Street Facility. Cargill's job posting, to the extent it can be deciphered, provides no guidance as to how the company prioritizes the various qualifications. The Court also declines to address the issue of pretext.

Complaint also asserts those claims under § 1981 and the THRA. (See ECF No. 63 at 15, 15 n.9.) Under 42 U.S.C. § 2000e-3(a),

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

The elements of a Title VII retaliation claim are as follows:

> (1) [the plaintiff] engaged in activity protected by Title VII; (2) the defendant knew of her exercise of her protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action.

Barrett v. Whirlpool Corp., 556 F.3d 502, 516 (6th Cir. 2009); see also Hunter v. Sec'y of U.S. Army, 565 F.3d 986, 995-96. (6th Cir. 2009).

There is no dispute that Plaintiff engaged in protected activity by filing a charge of discrimination with the EEOC on January 27, 2007, and by filing a joint complaint with the other Cargill employees in the Asbestos Litigation on January 14, 2008. (FF 5, 6.) These actions are protected activity under the statute's "participation" clause. Niswander v. Cincinnati Ins. Co., 529 F.3d 714, 720-21 (6th Cir. 2008); Doubaitary v. Parker-Hannifin Hydraulic Sys. Div., No. 1:07-cv-169, 2008 WL 2758460, at *8 (W.D. Mich. June 27, 2008). There also is no dispute that Cargill was aware of that protected activity.

### 1. **Presidents' Day 2008**

Because Plaintiff lost the opportunity to earn wages due to the decision to close the plant on Presidents' Day in 2008, which was a company-wide holiday, (FF 23), the third element of a prima facie case has been satisfied. Cargill argues that Plaintiff cannot establish a prima facie case because she cannot demonstrate a causal connection between Plaintiff's protected activity and the adverse employment action. (ECF No. 61-1 at 13-14.)

"Causation is found where the plaintiff proffer[s] evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." Lindsay v. Yates, 578 F.3d 407, 418 (6th Cir. 2009) (alterations in original) (internal quotation marks omitted); see also Upshaw v. Ford Motor Co., 576 F.3d 576, 588 (6th Cir. 2009). "The burden of proof at the prima facie stage is 'minimal'; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the protected activity and the retaliatory action." Upshaw, 576 F.3d at 588.

At her deposition, Plaintiff testified that she did not think the closure of the facility on Presidents' Day in 2008 was in retaliation for the Asbestos Litigation. (FF 27.) According to Coburn, "I really can't see how this case is related back to the lawsuit back then." (Coburn Dep. 45:5-20, ECF No. 62-1 at 8.) Instead, she stated that the most likely explanation for the

closure of the plant on Presidents' Day in 2008 is retaliation for filing charges pertaining to the lunch money and the failure to promote. (FF 27.) The protected actions, however, did not occur until after Presidents' Day in 2008, which was on February 18, 2008: Cargill did not implement its new lunch money policy until June 2008, (FF 29), and Johnson did not file his EEOC charge about the withholding of lunch money until September 24, 2008, (FF 8). The vacancy in the Production Supervisor position occurred eighteen months after the plant closure, in September 2009, (FF 36), and Johnson filed his EEOC charge about the failure to promote on October 20, 2009, (FF 9).[43] Plaintiff cannot establish that the closure of the Second Street Facility on Presidents' Day in 2008 was in retaliation for any of these events, which all occurred after the February 21, 2008, plant closure. <u>Conner v. City of Jackson, Tenn.</u>, No. 08-1146, 2009 WL 3429690, at *10 (W.D. Tenn. Oct. 19, 2009). For that reason alone, Plaintiff cannot establish a prima facie case on this claim.

Even if it were assumed that Plaintiff established a prima facie case of retaliation, she cannot establish pretext. When a plaintiff states a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. <u>Burdine</u>, 450 U.S. 248, 252-53. In this case, Cargill has stated that it closed the Second

---

[43]     Plaintiff filed her own EEOC charge about the Production Supervisor position on May 13, 2010. (FF 13.)

Street Facility on Presidents' Day in 2008 because it was not a particularly busy time and no deliveries were scheduled for that day. (FF 22.) This proffered explanation is "facially legitimate and non-discriminatory." White v. Baxter Healthcare Corp., 533 F.3d 381, 392 (6th Cir. 2008).

The burden then shifts to Plaintiff to show that the asserted justification is a pretext for unlawful discrimination.

> Pretext may be established either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action. However, the plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.

Id. at 392-93 (alteration in original) (citations omitted) (internal quotation marks omitted).

In her response to Cargill's proposed Factual Findings, Coburn argues that the plant was open for Presidents' Day in 2006, 2007, and 2009. (Coburn Aff., ECF No. 65-1, ¶¶ 5-6.) The plant was closed for Presidents' Day in 2010, 2011, and 2012, however, which tends to support Cargill's position that the plant is open only when deliveries are scheduled for Presidents' Day. (FF 25.) Coburn has admitted that she does not know whether any deliveries were scheduled for Presidents' Day in 2008 and that the plant normally

is not busy in February. (FF 24.) Johnson's speculation that it would have been profitable to keep the plant open on Presidents' Day, (see Johnson Aff., ECF No. 65-2, ¶¶ 16, 20), constitutes a disagreement with the employer's business judgment, which is insufficient to demonstrate pretext. See Bacon v. Honda of Am. Mfg., Inc., 192 F. App'x 337, 345 (6th Cir. 2006). Plaintiff has not established, with admissible evidence, that it would have been profitable to keep the Second Street Facility open on Presidents' Day in 2008.[44]

Because Plaintiff has not come forward with sufficient admissible evidence to create a triable issue of fact on the issues of causation and pretext, the Court GRANTS Cargill's Motion for Summary Judgment on this claim. Plaintiff's claim about the closure of the Second Street facility on Presidents' Day 2008 is DISMISSED WITH PREJUDICE.

### 2.  Lunch Money Payments

Cargill argues, as an initial matter, that Plaintiff cannot establish a prima facie case on her claim about the payment of

---

[44]     Plaintiff also emphasizes that she and her co-workers believed the decision to close the plant was retaliatory. (Coburn Aff., ECF No. 65-1, ¶ 7.) "Subjective beliefs, without affirmative evidence, are insufficient to establish a claim of retaliation." Adair v. Charter Cnty. of Wayne, 452 F.3d 482, 491 (6th Cir. 2006); see also Lewis v. Phillip Morris Inc., 355 F.3d 515, 533 (6th Cir. 2004) ("In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." (alterations in original) (internal quotation marks omitted)); Mitchell v. Toledo Hosp., 964 F.2d 577, 584-85 (6th Cir. 1992) ("Even if the Court were to consider the Affidavit [submitted by the plaintiff], the statements contained therein are nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient to establish a claim of discrimination as a matter of law.").

lunch money because she did not suffer an adverse action. (ECF
No. 61-1 at 9-10.) To establish her retaliation claim, Plaintiff
must show that she has been "discriminate[d] against" because of
her participation in the previous lawsuit. 42 U.S.C. § 2000e-3(a).
"[T]he term 'discriminate against' refers to distinctions or
differences in treatment that injure protected individuals."
Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006).
The Supreme Court emphasized that

> [t]he antiretaliation provision protects an individual
> not from all retaliation, but from retaliation that
> produces an injury or harm. . . . [A] plaintiff must show
> that a reasonable employee would have found the
> challenged action materially adverse, which in this
> context means it well might have dissuaded a reasonable
> worker from making or supporting a charge of
> discrimination.

Id. at 67-68 (internal quotation marks omitted).

A materially adverse employment action must inflict more than
a de minimis injury. "[I]t is important to separate significant
from trivial harms. . . . An employee's decision to report
discriminatory behavior cannot immunize that employee from those
petty slights or minor annoyances that often take place at work and
that all employees experience." Id. at 68; see also Hunter, 565
F.3d at 996 ("All four of Hunter's retaliation claims were of a de
minimis nature and amount to nothing more than petty slights and
minor annoyances."). Nonetheless, "the significance of any given
act of retaliation will often depend upon the particular
circumstances." White, 548 U.S. at 69.

34

Plaintiff does not contend that Cargill took any action that affected her basic pay, the rate of her overtime pay, or the frequency with which she was allowed to work overtime. Instead, she claims only that Cargill reinterpreted a provision of the CBA and stopped paying $3.50 in lunch money to employees who worked continuously for two hours beyond their shifts and who actually took a lunch break during that shift. (FF 29.) This action was taken in or around June 2008, (FF 29, 30), and affected all production workers at the Second Street facility, (FF 31). That decision was later reversed, and Cargill resumed the payment of lunch money to all employees who worked the requisite hours. (FF 34.) On September 21, 2008, Plaintiff received a check in the amount of $182 for the lunch money she did not receive from June through August, 2008. (Id.)

Cargill argues that a mere delay in payment is insufficient to constitute an adverse action. (ECF No. 61-1 at 10.) This statement is overly broad because some delays in payment might be sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination. In White, for example, the Supreme Court held that a thirty-seven-day suspension without pay was materially adverse even though the employee was later reinstated and received backpay. 548 U.S. at 70, 71-73. The Supreme Court explained that "White and her family had to live for 37 days without income. They did not know during that time whether or when White could return to

work. Many reasonable employees would find a month without a paycheck to be a serious hardship." Id. at 72.[45]

In Jackson v. United Parcel Service, Inc., 548 F.3d 1137 (8th Cir. 2008), the Eighth Circuit held that an employee had not established a materially adverse action that would support a retaliation claim where

> UPS intended to reinstate Jackson as a feeder driver within a few weeks of her disqualification. However, upon learning of her June 2006 EEOC charge, UPS decided to postpone Jackson's reinstatement and let the company's grievance process play out. After the grievance process, UPS promptly reinstated Jackson with full back pay and seniority. Even during her brief period of disqualification, she performed her prior work as a shuttle driver and was compensated accordingly.

Id. at 1142-43. The plaintiff was removed from her position as a feeder driver in June 2006 and was reinstated with back pay at the conclusion of the union grievance process in late September 2006. Id. at 1139-40.[46]

---

[45] See also Howington v. Quality Rest. Concepts, LLC, 298 F. App'x 436, 446 (6th Cir. 2008) (holding that a thirty-day suspension constituted adverse action for retaliation claim); Nguyen v. Gen. Motors Corp., No. 05-00019, 2006 WL 2460792, at *4-5 (W.D. Mich. Aug. 23, 2006) (holding, in disparate treatment case, that an eight-day suspension was a tangible employment action although employee eventually was paid in full).

[46] See also Harris v. Butler Cnty., Ohio, 344 F. App'x 195, 199 (6th Cir. 2009) (holding that a two- to three-month delay in receiving special commission that allowed deputy sheriffs to perform special "blacktopping details" directing traffic for outside companies not materially adverse because effect was temporary and pay was not directly effected); Ponder v. Martin-Brower Co., LLC, No. 3:07-0789, 2008 WL 3852252, at *11-12 (M.D. Tenn. Aug. 14, 2008) (holding that delay in paying wages for day employee took off not materially adverse under Tennessee law because Plaintiff was paid shortly after complaining and, thus, the company's actions would not dissuade a reasonable person from making or supporting a complaint of discrimination).

The instant case is closer to the fact pattern in <u>Jackson</u> than to that in <u>White</u>. Like <u>Jackson</u>, and unlike <u>White</u>, Plaintiff received her regular wages and all appropriate overtime during the relevant period. In the instant case, Plaintiff lost a maximum of $3.50 per day for those days on which she worked two hours past the end of her shift. That loss amounted to $182 over three months, which was later refunded. Plaintiff has not identified any hardship arising from the temporary withholding of $182 in meal money or argued that that hardship was sufficient to deter a reasonable employee from making or supporting a charge of discrimination.

Other courts have held that an extremely small monetary loss that is not reimbursed is not sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination. <u>See, e.g.</u>, <u>Kindle v. Waukegan Cmty. Unit Sch. Dist. 60</u>, No. 07 C 4643, 2009 WL 4043384, at *5 (N.D. Ill. Nov. 19, 2009) ("Kindle's claim that she was denied Good Friday pay constitutes, at most, one day of missed pay per year for nine years. It is unlikely that a reasonable jury could determine that such a <u>de minimis</u> economic loss constitutes an actionable adverse employment action."), <u>aff'd</u>, 401 F. App'x 134 (7th Cir. 2010); <u>Coleman v. ARC Auto., Inc.</u>, No. 3:06-cv-168, 2007 WL 325765, at *4 (E.D. Tenn. Jan. 31, 2007) ("[T]he delay of a few days in receiving [plaintiff's] $76 overtime underpayment falls far short of an adverse employment action."), <u>aff'd</u>, 244 F. App'x 948 (6th Cir. 2007).

In the context of the instant case, the Court finds Cargill's argument to be persuasive and, therefore, holds that Plaintiff has not satisfied the third element of her prima facie case. For that reason alone, this retaliation claim must be dismissed.

Cargill also argues that Plaintiff cannot establish the fourth element of her prima facie case. (ECF No. 61-1 at 12-13.) Closeness in time is one indicator of a causal connection, <u>Little v. BP Exploration & Oil Co.</u>, 265 F.3d 357, 364-65 (6th Cir. 2001), but temporal proximity alone ordinarily is insufficient to establish a causal connection, <u>Arendale v. City of Memphis</u>, 519 F.3d 587, 606 (6th Cir. 2008) (holding that there is no inference of retaliation when adverse action occurs two months after protected conduct). In most cases, the causation element can be satisfied by temporal proximity coupled with other evidence of retaliatory conduct. <u>See, e.g.</u>, <u>Hamilton v. Gen. Elec. Co.</u>, 556 F.3d 428, 435-36 (6th Cir. 2009) (holding that evidence that employee was fired three months after he filed EEOC charge and that "his bosses heightened their scrutiny of him after he filed his EEOC complaint" supports an inference of causation); <u>Clay v. United Parcel Serv., Inc.</u>, 501 F.3d 695, 718 (6th Cir. 2007) (holding that a six-month interval was insufficient to infer causation); <u>Michael v. Caterpillar Fin. Servs. Corp.</u>, 496 F.3d 584, 596 (6th Cir. 2007) (holding that a two-day interval between complaint and placement on paid administrative

leave, coupled with other evidence, was sufficient to infer causation).

However, "a reasonable juror may infer a plaintiff's undertaking of a protected activity was the likely reason for the defendant's adverse action when the temporal proximity is 'very close' in retaliation cases." Lindsay, 578 F.3d at 419; see also Upshaw, 576 F.3d at 588 ("We have held that the combination of close temporal proximity between an employer's heightened scrutiny and that plaintiff's filing of an EEOC charge is sufficient to establish the causal nexus needed to establish a prima facie case of retaliation." (internal quotation marks omitted)); DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2004) ("In fact, this Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."). Cases that hold the causation element to be satisfied solely by temporal proximity involve very short intervals between the protected conduct and the adverse action. See, e.g., Upshaw, 576 F.3d at 588-89.

As previously noted, Plaintiff filed her first charge of discrimination with the EEOC on January 2, 2007, and she filed the Asbestos Litigation on January 14, 2008. (FF 5-6.) Cargill changed its lunch-money policy five months after the Asbestos Litigation was

filed, in June of 2008. (FF 29-30.) The five-month delay between the protected activity and the alleged retaliatory action is insufficient to permit an inference of causation based solely on temporal proximity.[47]

Because Plaintiff has not established a prima facie case of retaliation, the Court GRANTS Cargill's Motion for Summary Judgment on the claim regarding the payment of lunch money. That claim is DISMISSED WITH PREJUDICE.

### 3. The Failure-to-Promote Claims

Cargill has moved to dismiss Plaintiff's retaliation claims under 42 U.S.C. § 1981 and the THRA arising from its failure to promote her to the position of Production Supervisor. Cargill first argues that Plaintiff cannot establish that the failure to promote her to the position of Production Supervisor was an adverse action. (ECF No. 61-1 at 10.) Plaintiff admits that she did not apply for the position of Production Supervisor, (FF 37), and there is no evidence in the record that Cargill even knew that Plaintiff was interested in a promotion or in that position. "Not receiving a promotion for which one did not apply would not dissuade a reasonable worker from engaging in protected conduct, and accordingly does not constitute a materially adverse action."

---

[47]     Cargill also emphasizes that Plaintiff testified at her deposition that she did not know what protected action motivated Cargill to change its lunch-money policy. (ECF No. 61-1 at 12-13.) The quotation on which Cargill relies, however, was not submitted in support of paragraph thirty-five of Cargill's Statement of Undisputed Facts and, therefore, cannot be addressed. See supra p. 17 n.27.

<u>Vaughan v. Louisville Water Co.</u>, 302 F. App'x 337, 348 (6th Cir. 2008).

Plaintiff also has not established causation. At her deposition, Plaintiff testified that she is not sure that Cargill's failure to tell union members how to apply for open positions was retaliatory. (FF 45.) She testified as follows:

> Q.   Do you think Cargill was retaliating by not telling the union employees how to apply for a position, for the production supervisor position?
>
> A.   I thought it was wrong.
>
> Q.   But do you think it was retaliation?
>
> A.   I don't know if I can say it was retaliation or not.
>
> Q.   Do you think it is possible that it was just an oversight that somebody in management didn't realize that you all didn't know how to apply?
>
> A.   I don't think it was an oversight because it is easy to ask questions.
>
> Q.   But you don't quite think it was retaliation either?
>
> A.   I can't say.

(Coburn Dep. 91:14-92:5, ECF No. 62-1 at 18.)

Because Plaintiff has not established a prima facie case of retaliation, the Court GRANTS Cargill's Motion for Summary Judgment on this claim. Plaintiff's retaliation claim arising from Cargill's failure to promote her to the position of Production Supervisor is DISMISSED WITH PREJUDICE.

Every claim asserted by Plaintiff has been dismissed, so the action against Cargill is DISMISSED WITH PREJUDICE.[48] Judgment shall be entered for Defendants.

## III.    APPEAL ISSUES

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should she seek to do so. The Sixth Circuit requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal would be frivolous. Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Federal Rule of Appellate Procedure 24(a). See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a) provides that if a party seeks pauper status on appeal, she must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the litigant must file her motion to

---

[48]    The claims against the individual defendants under § 1981 and the THRA have previously been dismissed without prejudice. (See ECF No. 51 at 12-15.)

42

proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. <u>Id.</u> The same considerations that lead the Court to dismiss Plaintiff's claims compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal in forma pauperis. Leave to proceed on appeal in forma pauperis is, therefore, DENIED.[49]

**IT IS SO ORDERED,** this 18th day of December, 2012.


s/ Jon P. McCalla
JON P. McCALLA
CHIEF U.S. DISTRICT JUDGE

---

[49] If Plaintiff files a notice of appeal, she must also pay the full $450 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.